McIlvaine, C. J.
The statute under which the plaintiff was organized authorized it to loan money among members and depositors of such corporation, thereby, by plain implication, authorizing it to receive deposits of money. The receiving of deposits is claimed to be a banking power, and inasmuch as this statute was not submitted to the electors of the state for their approval, as required by section 7, article 13 of the constitution, it is claimed that it is without force or effect. A similar question was submitted to this court in Dearborn v. Northwestern Savings Bank (ante, page 617), in connection' with which this case was fully argued and submitted. In that case it has been x-esolved that “ associations with banking powers,” as used in the section of the constitution referred to, relates only to banks of issue. This ruling is conclusive against the claim made in this case as above set forth.
The loan made by plaintiff to S. H. Bates, as evidenced by the note and mortgage sued on, can be maintained as within the power of the plaintiff corporation only on the assumption that the defendant Bates was, at the time the loan was made, a depositor of the plaintiff.
The fact is, that at the time the loan was made, the defendant deposited with the plaintiff the sum of two dollars. *671 Whether this deposit would be considered as colorable merely, and an evasion of the statute, in an action by the state to punish the usurpation of a franchise not granted by the charter of the plaintiff, we need not now inquire. It is enough for us now to say that the defendant, who acquiesced in the form and manner of the deposit, as the means whereby he realized the money loaned, and became in fact the debtor of the plaintiff, who was managing a trust fund for the benefit of its members, should not be heard to deny that he was a depositor.
• Was the loan usurious ? Section 2 of the act of May 5, 1868, as amended May 9, 1868, reads as follows: “ Such corporation shall be authorized and empowered to levy, assess and collect from its members such sums of money, by rates of stated dues, fines, interest on loans advanced, and premiums bid by members or depositors for the right of precedence in taking loans, as the corporation by its by-laws shall adopt; also, to acquire, hold, incumber and convey all such real estate and personal property as may be legitimately pledged to it on such loans, or may otherwise be transferred to it in the due course of its business; provided that the dues, fines and premiums so paid by members or depositors of such corporation, although paid in addition to the legal rate of interest on loans taken by them," shall not be construed to make the loans so taken usurious.”
The rate of “ interest on loans advanced” is six per cent, per annum, as regulated by the statute on interest. The parties, however, to a bond, bill, promissory note or other instrument of writing for the forbearance or payment of money at any future time, may stipulate therein for the payment of interest upon the amount thereof, at any rate not exceeding eight per cent, per annum. If a rate exceeding 'that allowed by law be stipulated for, it is settled, that the parties must be remitted to the rate of six per cent, per annum. McClelland v. Sorter, 39 Ohio St. 12.
The rate of interest stipulated for in the note sued on is in excess of the highest rate allowed by law, unless the “ premium at the rate of two per cent, per annum ” is not, under section *672 2, above quoted, to be regarded as interest. The provision of the statute is, that such corporation may collect from its members stated “ dues, fines, interest on loans advanced, and premiums bid by members cmd depositors for the right of precedence in taking loans f &c., “ provided that the dues, fines and premiums so paid by members or depositors of such corporation, although paid in addition to the legal rate of interest on loans taken by them, shall not be construed to make the loans so taken usurious.” The premium named in the note is unlike the premium named in the statute. It was1 not measured or ascertained by competitive bidding among the members and depositors, as we understand the statute to require. It was, in fact, a part of the price named by the lender to bo paid by the borrower for the use of the money loaned. The assent of the borrower to pay the price required, did not make him a bidder within the meaning of this statute. Calling the excess above the highest legal rate a premium did not change the nature of the transaction. It was usurious.
The court below also gave judgment in favor of the plaintiff for $603.00 (which was declared to be the first lien on the premises), on account of taxes and assessments appearing upon the tax duplicate of the county as having been duly assessed against the mortgaged premises and paid during the existence of plaintiff’s lien, by Withington, its treasurer, with the moneys of the plaintiff and for its benefit, for the purpose of protecting its mortgage security. During the trial, defendant offered testimony tending to show that a portion of the taxes and assessments so paid was illegally assessed against the property, which testimony was rejected by the conrt. The rejection of this testimony is assigned for error.
Section 2853 of Revised Statutes reads as follows : “ Any person having a lien upon real estate may pay the taxes thereon in so far as the .same are a lien upon such real estate, and the amount of taxes so paid shall, from the time of payment, operate as a lien upon such real estate, in preference to all other liens, and the money so paid may also be recovered by action for money paid to his use against the person or persons legally liable for the payment of such taxes.”
*673 The record shows that the taxes and assessments appeared on the duplicate to have been regularly and legally assessed, and that the plaintiff had no knowledge or notice of any defect or illegality in the assessment. The statute only gives a á lienholder the right to pay taxes and thus save his security in so far as the taxes are a lien upon the real estate. Hence the question fairly arises, was the plaintiff bound to inquire as tO' the legality of the taxes, beyond the appearances of the duplicate, and as to defects of which he had no knowledge or notice. This question is not free from doubt. But, inasmuch as the owner of the real estate, under like circumstances, would be justified in paying the taxes, and might afterwards, under the statute, upon discovering an illegality in the assessment, recover them back from the county without being held to the consequences of having made voluntary payment, so we think the lienor should be justified in making the payment to protect his lien, although he has no right to recover them back from the county in case of a subsequent discovery of illegality in the assessment. In the latter case, the payment by the lienor should be considered as payment by the owner, and the right to recover back wonld attach to the owner. Such holding does not nullify the limitation in the statute upon the right of a lienor to save his security by a payment of taxes, but leaves the same with ample scope for operation. If the owner has no knowledge of illegality in the assessment, or if he has such knowledge, and does not communicate it to his mortgagee, wo think the statute should be so construed as to authorize the latter to protect his lien by making payment of the taxes appearing on the duplicate to have been regularly and legally assessed.
Another question, as to pleading, has been raised. The plaintiff has not prayed for judgment on account of taxes paid. "Withington has prayed for judgment therefor in his own name. The record shows that the judgment for taxes paid (without penalties) was properly denied to Withington, and although no amendment was made to plaintiff’s petition, judgment was rendered in favor of plaintiff for the amount so paid. *674 An amendment should have been made to plaintiff’s petition, but as ’Withington has undoubtedly assented to all that was done, and as the defendant has suffered a mere techinal prej u-dioe, we would not reverse the judgment for such error.

For including usurious interest in the judgment for flamtiff, the judgment is reversed and cause remanded.